Kingsdown, Inc. v. Hinshaw, 2015 NCBC 27.

STATE OF NORTH CAROLINA

ALAMANCE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1701

KINGSDOWN, INCORPORATED,

        Plaintiff,

v.

W. ERIC HINSHAW, REBECCA
HINSHAW, and ANNE RAY,

        Defendants.

ANNE RAY,

        Third-Party Plaintiff,

v.

FRANK HOOD, THOMAS I. McLEAN,
GLENDEL STEPHENSON, WILLIAM
S. PEARSON, WAYNE E. TUMLIN,
TUGGLE DUGGINS P.A., and JOHN
DOE,

        Third-Party Defendants.

ORDER AND OPINION ON
DEFENDANTS ERIC AND REBECCA
HINSHAW'S MOTION TO
DISQUALIFY KINGSDOWN'S
COUNSEL AND KINGSDOWN'S
OBJECTION AND MOTION TO
STRIKE THE DECEMBER 10, 2014
HINSHAW AFFIDAVIT

{1}    **THIS MATTER** is before the Court on Defendants W. Eric Hinshaw ("Mr. Hinshaw") and Rebecca Hinshaw's ("Ms. Hinshaw") (collectively, the "Hinshaws") Motion to Disqualify Plaintiff Kingsdown, Inc.'s ("Kingsdown" or the "Company") Counsel, Tuggle Duggins, P.A. ("Tuggle Duggins" or the "Firm") ("Motion to Disqualify"), and Kingsdown's Objection and Motion to Strike the December 10, 2014 Affidavit of Mr. Hinshaw ("Motion to Strike").[1]

---

[1] Defendant Anne Ray has not moved to disqualify Tuggle Duggins as counsel for Kingsdown in connection with the Company's claims against her and her counterclaims against the Company, or as counsel for Third-Party Defendants Hood, McLean, Stephenson, Pearson, and Tumlin in connection with Ray's claims against them. Accordingly, whether Tuggle Duggins should be disqualified from representation adverse to Defendant Ray in this action is not presently before the Court.

{2}     **THE COURT**, having considered the parties' Motions, briefs in support of and in opposition to the Motions, the evidence of record, and the arguments of counsel made at the December 15, 2014 hearing held in this matter, hereby **GRANTS** the Hinshaws' Motion to Disqualify and **DENIES** Kingsdown's Motion to Strike.

> *Tuggle Duggins P.A. by Denis E. Jacobson, Jeffrey S. Southerland, and Alan B. Felts for Plaintiff Kingsdown, Inc.*

> *Smith Moore Leatherwood LLP by Robert R. Marcus, Heather C. White, Whit D. Pierce, and Richard A. Coughlin for Defendants W. Eric Hinshaw and Rebecca Hinshaw.*

> *William C. Ray for Defendant Anne Ray.*

Bledsoe, Judge.

I.

PROCEDURAL HISTORY

{3}     Kingsdown commenced this action against the Hinshaws and Defendant Anne Ray ("Ms. Ray") on August 29, 2014 and subsequently filed an Amended Complaint on September 2, 2014, generally alleging that while serving as Kingsdown's Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board"), Mr. Hinshaw breached his "duty to act in good faith and in the best interests of Kingsdown" by "repeatedly engag[ing] in self-dealing . . . and . . . abus[ing] his position as a fiduciary," which "resulted in substantial benefits for himself, [Ms.] Hinshaw, and Ms. Ray at the expense of Kingsdown." (Am. Compl. ¶¶ 6–7.)

{4}     Specific to the Motions at issue, Kingsdown alleges that (i) Mr. Hinshaw and Ms. Ray authorized non-business expenses for each other and Ms. Hinshaw for reimbursement by Kingsdown (Am. Compl. ¶ 10); (ii) Mr. Hinshaw leased his undeveloped Ocean Isle Beach property ("Beach Property") to Kingsdown for approximately 15 years and then directed Kingsdown to build a luxurious single-family home on the property, furnish and clean the property, pay monthly rent, insurance, taxes, and upkeep on the property, all without the Board's knowledge or approval – and the lease allowed Mr. Hinshaw to keep all improvements, including the house, on the Beach Property when the lease terminated (the "Beach House

Transaction") (Am. Compl. ¶¶ 13–20); (iii) Mr. Hinshaw enacted a compensation program that allowed him to receive excessive compensation without the knowledge or approval of the Board (Am. Compl. ¶¶ 21–27); and (iv) Mr. Hinshaw directed Kingsdown to pay his and his wife's personal travel expenses and personal employees' salaries (Am. Compl. ¶¶ 28–30).

{5}  On October 17, 2014, the Hinshaws responded to Kingsdown's Amended Complaint by filing an Answer with various defenses and two counterclaims, and at the same time filed their Motion to Disqualify along with Mr. Hinshaw's first supporting affidavit ("First Hinshaw Affidavit"), contending that Tuggle Duggins should be disqualified from representing Kingsdown in this matter by operation of North Carolina Rules of Professional Conduct 1.9 ("Rule 1.9") and 1.13 ("Rule 1.13"), and because Tuggle Duggins advised Mr. Hinshaw on the central issues of this lawsuit.

{6}  On November 21, 2014, Kingsdown filed a Response Brief in Opposition to the Motion to Disqualify, along with the supporting affidavits of Firm attorneys Jeffrey Southerland ("Southerland Affidavit"), Denis E. Jacobson ("Jacobson Affidavit"), Alan B. Felts ("Felts Affidavit"), Bradley L. Jacobs ("Jacobs Affidavit"), and Kenneth M. Johnson[2] ("Johnson Affidavit"), essentially arguing that Tuggle Duggins' representation of Kingsdown against the Hinshaws is specifically permitted under North Carolina Rules of Professional Conduct 1.9 and 1.10 ("Rule 1.10").

{7}  On December 10, 2014, the Hinshaws filed a Reply Brief in Support of their Motion to Disqualify along with Mr. Hinshaw's second supporting affidavit ("Second Hinshaw Affidavit").

{8}  On December 12, 2014, Kingsdown filed a Motion to Strike the Second Hinshaw Affidavit. On December 14, 2014, the Hinshaws responded to Kingsdown's Motion to Strike. On December 15, 2014, Kingsdown submitted William G. Burgin, III's first affidavit ("First Burgin Affidavit") in opposition to the Hinshaws' Motion to Disqualify.

---

[2] Mr. Johnson was a member of the Firm at the time he provided his affidavit. He is no longer an attorney at the Firm. (March 12, 2015 Southerland Aff. ¶ 3).

{9}   Also, on December 15, 2014, the Court held a hearing on the Hinshaws' Motion to Disqualify. At the hearing, the Court granted Kingsdown leave of court to file one or more additional affidavits in support of its position opposing the Firm's disqualification in light of the December 10, 2014 filing of the Second Hinshaw Affidavit.

{10}   On December 19, 2014, Kingsdown filed four additional affidavits. The affiants were Kingsdown Director Fairfax Reynolds, Kingsdown's special advisor James M. Mann, and Firm attorneys Wayne Tumlin ("Tumlin Affidavit") and William G. Burgin, III ("Second Burgin Affidavit").[3]

{11}   The time for additional submissions and arguments has now expired and the Motions are ripe for resolution.

## II.

## BACKGROUND

{12}   The Court limits its recitation of the background to the facts and allegations that are relevant for purposes of resolving the present Motion.

{13}   Tuggle Duggins has served as Kingsdown's corporate counsel since 1987, representing the company on all legal matters except for patents and trademarks. (First Hinshaw Aff. ¶ 5; *see* Southerland Aff. ¶ 7.)   Mr. Hinshaw served as Kingsdown's CEO, President, and/or Chairman of the Board from 1981 until his retirement in August 2012. (First Hinshaw Aff. ¶ 2.)   During the period of his involvement with Kingsdown, Mr. Hinshaw was also represented by Tuggle Duggins on a number of personal matters. According to the Hinshaws, those attorneys, some

---

[3] Kingsdown has filed a Motion to Strike the Second Hinshaw Affidavit, contending that the Court should not consider the filing because it was not submitted in compliance with N.C. R. Civ. P. 6(d) ("Rule 6(d)"), and because it contains Kingsdown's privileged information. First, the Court concludes that Plaintiff's violation of Rule 6(d) does not prejudice Kingsdown because the Court permitted Kingsdown to tender four additional affidavits in rebuttal. *Rockingham Square Shopping Center, Inc. v. Integon Life Ins. Corp.*, 52 N.C. App. 633, 641, 279 S.E.2d 918, 924(1981) (Rules "6(b) and (d) give[] the trial court discretion to allow the late filing of affidavits"). Second, as explained *infra*, the Court concludes that the Hinshaws had an attorney-client relationship with Tuggle Duggins and therefore had the right to waive the attorney-client privilege and submit statements revealing the details of the Firm's past representation of them. The Court further concludes that the Second Hinshaw Affidavit largely provided further detail to facts recited in the First Hinshaw Affidavit and that the Court's consideration of the Second Hinshaw Affidavit does not prejudice Kingsdown in light of the Court's decision to permit Kingsdown to submit additional affidavits in response.

of whom they allege are still with the Firm, "performed work for the Hinshaws relating to their homes, their personal property, their bank accounts, their personal relationships, their retirement plans, and their landlord-tenant relationship with Kingsdown," (Defs.' Reply Supp. Mot. Disqualify, p. 8), all while the firm concurrently served as Kingsdown's corporate counsel.  The following provides a list of the matters on which the Hinshaws contend Tuggle Duggins attorneys represented Mr. and/or Ms. Hinshaw (which Mr. Hinshaw alleges is not exhaustive):

(i.) Bradley Jacobs (currently a Tuggle Duggins attorney) and Richard Tuggle (who passed away on January 23, 2012) performed legal services in connection with an irrevocable trust for Mr. Hinshaw from 1993 until 2013, including beneficiary reassignments with respect to Mr. Hinshaw's life insurance plan, the issuance of new certificates, and the handling of payments, with first, Mr. Tuggle, and later, Mr. Jacobs serving as trustee. (Second Hinshaw Aff. ¶ 5(a); *see also* Southerland Aff. ¶ 9; Jacobs Aff. ¶ 5.)

(ii.) In 1997, Mr. Tuggle and William G. Burgin, III (currently a Tuggle Duggins attorney) worked on the Beach House Transaction in which "Mr. Hinshaw traded his beach house for a beach property that Kingsdown owned" so that Mr. Hinshaw could lease the undeveloped Beach Property back to Kingsdown. (Second Hinshaw Aff. ¶ 5(b).)  In 1998, Mr. Tuggle drafted the lease, and Mr. Burgin drafted a memorandum of lease that was recorded in the Office of the Register of Deeds in Brunswick County to publicly record the lease agreement. (Second Hinshaw Aff. ¶ 5(b); *see also* Defs.' Reply Supp. Mot. Disqualify, Ex. B; First Burgin Aff. ¶4; Second Burgin Aff. ¶¶ 2–4.)

(iii.) In 1998 and 1999, Elizabeth Grimes (no longer a Tuggle Duggins attorney) handled various matters in connection with Mr. Hinshaw's separation and divorce from his ex-wife. (Second Hinshaw Aff. ¶ 5(c); *see also* Southerland Aff. ¶ 9.)

(iv.) In 1999, Mr. Tuggle prepared a trust agreement and last will and testament for Mr. Hinshaw. (Second Hinshaw Aff. ¶ 5(d); *see also* Southerland Aff. ¶ 9.)

(v.) In 1999, Mr. Burgin prepared a general warranty deed to transfer the Beach Property to Mr. Hinshaw from his ex-wife. (First Burgin Aff. ¶ 5; Second Hinshaw Aff. ¶ 5(e).)  This deed was recorded in the Office of the Register of Deeds in Brunswick County. (Second Hinshaw Aff. ¶ 5(e); *see also* Defs.' Reply Supp. Mot. Disqualify, Ex. E.)

(vi.) In 2000, Bill Connor (no longer a Tuggle Duggins attorney) performed legal work in connection with the construction of Mr. Hinshaw's personal residence in Durham, North Carolina, including drafting the construction agreement. (Second Hinshaw Aff. ¶ 5(f).)

(vii.) In 2000, Mr. Tuggle and Ms. Grimes (each no longer a Tuggle Duggins attorney) drafted and finalized a premarital agreement between the Hinshaws. (Second Hinshaw Aff. ¶ 5(g).)

(viii.) In 2002, Mr. Burgin handled a settlement relating to the Beach House Property involving Kingsdown's tenancy. (Second Hinshaw Aff. ¶ 5(i); *see also* First Burgin Aff. ¶ 6.)

(ix.) In 2001 and 2002, Kenneth Johnson (no longer a Tuggle Duggins attorney), administered and terminated Mr. Hinshaw's personal money-purchase pension plan and drafted letters to Mr. Hinshaw with advice concerning IRS procedures and regulations. (Second Hinshaw Aff. ¶ 5(h); *see also* Defs.' Reply Supp. Mot. Disqualify, Ex. D; Southerland Aff. ¶¶ 12–13.)

(x.) In 2003, an unknown Tuggle Duggins attorney drafted a power of attorney and healthcare power of attorney for Mr. Hinshaw's son, naming Mr. Hinshaw as attorney-in-fact in both documents. (Second Hinshaw Aff. ¶ 5(k).)

(xi.) In 2003, Tuggle Duggins attorneys helped Mr. Hinshaw refinance the Beach Property. Martha Bailey, a Tuggle Duggins paralegal, signed a title insurance letter in relation to the refinancing. (Second Hinshaw Aff. ¶ 5(l).)

(xii.) In 2004, Mr. Burgin handled the settlement and closing on a Mooresville, North Carolina property that was personally owned by Mr. Hinshaw. (Second Hinshaw Aff. ¶ 5(m).)

(xiii.) Mr. Tuggle and Mr. Jacobs structured and established a life insurance trust for Ms. Hinshaw in 2006 and 2007. (Second Hinshaw Aff. ¶ 5(a); *see also* Southerland Aff. ¶ 9.)

(xiv.) In 2006 and 2007, Mr. Tuggle and Mr. Jacobs drafted and revised the Hinshaws' last wills and testaments. (Second Hinshaw Aff. ¶ 5(n).) Mr. Tuggle prepared codicils to the Hinshaws' wills in 2010 and advised Mr. Hinshaw to revisit his estate plan as various tax laws changed. (Second Hinshaw Aff. ¶ 5(n); *see also* Southerland Aff. ¶ 9.)

(xv.) From 2006 to 2010, Mr. Johnson handled Mr. Hinshaw's personal 401(k) profit sharing plan and trust and sent letters containing tax advice

concerning IRS procedures and regulations. (Second Hinshaw Aff. ¶ 5(o); *see also* Southerland Aff. ¶ 9; *see contra* Johnson Aff. ¶ 3.)

(xvi.) In 2011, Mr. Tuggle prepared a rent-abatement agreement on the Beach Property to eliminate rent payments to Mr. Hinshaw for one year. (Second Hinshaw Aff. ¶ 5(p).)

{14} In addition to the numerous personal matters the Hinshaws contend Tuggle Duggins attorneys handled for them, Mr. Hinshaw also claims that Tuggle Duggins attorneys provided him with advice in his individual capacity regarding his duties as CEO of Kingsdown. (Second Hinshaw Aff. ¶¶ 10, 11(b), 11(c); Def.'s Reply Supp. Mot. Disqualify, Ex. G; *cf.* Tumlin Aff. ¶ 5.)

{15} The Hinshaws contend that "[m]any, if not all, of the actions taken by Mr. Hinshaw that are the subject of the Amended Complaint were undertaken at the suggestion of [Tuggle Duggins], and, in discharging his duties, Mr. Hinshaw reasonably relied on the advice of [Tuggle Duggins] . . . and reasonably believed that the matters on which Tuggle Duggins provided legal advice were within its professional and expert competence." (Hinshaw Defs.' Answer, Defenses, and Counterclaims, p. 14.)

{16} The Hinshaws assert that at least three of the matters in which Tuggle Duggins attorneys allegedly represented the Hinshaws are at issue in this lawsuit.

{17} First, the Hinshaws contend that Tuggle Duggins attorneys, including Mr. Tuggle and Mr. Burgin, handled the Beach House Transaction as well as subsequent matters relating to the Beach Property, which Kingsdown now contends involved fraudulent and self-dealing transfers which were in breach of Mr. Hinshaw's fiduciary duties to Kingsdown. (Second Hinshaw Aff. ¶ 5(b); s*ee* Am. Compl. ¶¶ 4–12.)

{18} Second, the Hinshaws assert that Tuggle Duggins attorneys, including Mr. Tumlin, allegedly suggested and implemented the key components of Kingsdown's executive compensation structure and that Kingsdown now claims that payments made to Mr. Hinshaw under that structure were excessive, fraudulent, and self-

dealing transfers in breach of Mr. Hinshaw's fiduciary duty. (Second Hinshaw Aff. ¶ 11(b).)

{19} Last, the Hinshaws allege that current Tuggle Duggins attorneys, including Mr. Tumlin, Mr. Jacobs, and Mr. Burgin, had access to the intimate details of the Hinshaws' personal finances, which the Hinshaws contend are material to Kingsdown's claims that Mr. Hinshaw paid himself excessive compensation (Am. Compl. ¶¶ 21–27), caused Kingsdown to pay Ms. Hinshaw a sham salary to cover personal travel expenses (Am. Compl. ¶ 29), received self-dealing monetary benefits from the Beach House Transaction (Am. Compl. ¶¶ 13–20), and received unauthorized personal and family benefits at Kingsdown's expense (Am. Compl. ¶¶ 28–30).

{20} Kingsdown acknowledges that the Firm represented the Hinshaws in certain limited capacities over the years but denies that any current member of the Firm represented the Hinshaws in any matters that are the same as or substantially related to the matters at issue in this litigation and further that no current Firm member has any material confidential information of the Hinshaws.[4]

## III.
## ANALYSIS

### A.    Legal Standard

{21} The trial court's decision to disqualify counsel is within its sound discretion and will not be disturbed, absent an abuse of discretion. *Robinson & Lawing, L.L.P. v. Sams*, 161 N.C. App. 338, 339, 587 S.E.2d 923, 925 (2003) (citation omitted). The federal courts have cautioned that "[t]he drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel; and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic

---

[4] Although the Firm acknowledges its representation of the Hinshaws, as discussed *infra*, Tuggle Duggins never (i) opened a client matter for the Hinshaws, (ii) sent an engagement letter to the Hinshaws, (iii) asked the Hinshaws for payment, or (iv) received payment from the Hinshaws for the Firm's services. (Pl.'s Resp. Opp. Mot. Disqualify, p. 3.)

reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992) (citation omitted).

{22} Indeed, "[i]n order to avoid the potential for abuse, the Fourth Circuit has held that disqualification for violations of an ethical canon 'may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.'" *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 U.S. Dist. LEXIS 103159, at *7 (W.D.N.C. Sept. 13, 2011) (quoting *Shaffer*, 966 F.2d at 145) (applying North Carolina law).

{23} Nevertheless, when deciding a motion to disqualify, courts must be mindful that a primary goal of our judicial system is to maintain public confidence. This "demands that courts prevent even the appearance of impropriety and thus resolve any and all doubts in favor of disqualification." *Chemcraft Holdings Corp. v. Shayban*, 2006 NCBC 13 ¶ 34 (N.C. Super. Ct. Oct. 5, 2006), http://www.ncbusinesscourt.net/opinions/2006%20NCBC%2013.htm; *see, e.g.*, *United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir. 1977); *HealthNet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 758 (S.D. W. Va. 2003). As explained by Judge Diaz:

> In preventing the appearance of impropriety, the client's perception of events is of paramount importance and overshadows the details of his attorney's conduct. The conduct of the attorney need not constitute a violation of the Rules of Professional Conduct, and certainly need not rise to the level of professional negligence in order to warrant disqualification. The relevant cases instruct us to refrain from weighing the conduct of counsel with 'hairsplitting nicety' in the context of a motion to disqualify. *United States v. Trafficante*, 328 F.2d 117, 120 (5th Cir. 1964).

*Chemcraft*, 2006 NCBC 13 ¶ 34.

{24} Applying these principles, and after reviewing the briefs, affidavits, and other evidence of record advanced by the parties, the Court concludes that Tuggle Duggins should be disqualified from representing Kingsdown against the Hinshaws in this action for two primary reasons. First, on the current record, Rule 1.10(b)

prohibits Tuggle Duggins from representing Kingsdown against the Hinshaws because Kingsdown has not carried its burden to show that the Firm does not have any material confidential information of the Hinshaws. Second, the extensive nature of the Firm's prior representation of the Hinshaws for a period of over twenty years, including in connection with the Beach House Transaction, which is at the core of this dispute, creates an appearance of impropriety that requires the Firm's disqualification.[5]

B.    North Carolina Rule of Professional Conduct 1.10(b)

{25}   The Hinshaws argue that Tuggle Duggins should be disqualified for failing to comply with Rule 1.10(b).[6]  That Rule provides as follows:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

N.C. R. Prof'l Conduct 1.10(b).  Tuggle Duggins is disqualified from representing Kingsdown under Rule 1.10(b) if (1) the Hinshaws carry their burden to show that they shared an attorney-client relationship with a former Tuggle Duggins lawyer (2) on matters that are the same or substantially related to those in which Tuggle Duggins now represents Kingsdown against the Hinshaws, and (3) Tuggle Duggins

---

[5] At this time, the Court's ruling is limited to the Firm's representation of Kingsdown against the Hinshaws and does not affect the Firm's representation of Kingsdown against Defendant Anne Ray or the Firm's representation of Third Party Defendants Hood, McLean, Stephenson, Pearson and Tumlin.

[6] Although the Hinshaws do not move for disqualification under Rule 1.10(b) in their Motion to Disqualify and Supporting Brief, Kingsdown raises its compliance with Rule 1.10(b) in its Response, and the Hinshaws contend in their Reply that the Firm has failed to meet its burden to avoid disqualification under Rule 1.10(b).  The Firm's compliance with Rule 1.10(b) is therefore properly before the Court.

does not carry its burden to prove that the Firm no longer has any of the Hinshaws' material confidential information protected by Rules of Professional Conduct 1.6 and 1.9(c).

### i. Attorney Client Relationship

{26} Whether an attorney-client relationship exists is a question of fact for the trial court. *See Cornelius v. Helms*, 120 N.C. App. 172, 175, 461 S.E.2d 338, 339 (1995) (citation omitted). The relationship "may be implied from the conduct of the parties, and is not dependent on the payment of a fee, nor upon the execution of a formal contract." *The North Carolina State Bar v. Sheffield*, 73 N.C. App. 349, 358, 326 S.E.2d 320, 325, *cert. denied*, 314 N.C. 117, 332 S.E.2d 482, *cert. denied*, 474 U.S. 981 (1985) (citation omitted). Rather, the Court must focus on "whether [the attorney's conduct] was such that an attorney-client relationship could reasonably be inferred" by the purported client. *Id.* "An important factor in determining the existence of the relationship is the client's subjective belief." *Flick Mortg. Investors v. Epiphany Mortg.*, 2006 NCBC 3 ¶ 3 (N.C. Super. Ct. Feb. 1, 2006), http://www.ncbusinesscourt.net/opinions/2006%20NCBC%203.htm (quoting *Teja v. Saran*, 68 Wn. App. 793, 796, 846 P.2d 1375, 1377 (1993)).

{27} Further, "[w]hether an attorney for an organization also represents a constituent is a question of fact for the trial court." *Classic Coffee Concepts, Inc. v. Anderson*, 2006 NCBC 21 ¶ 58 (N.C. Super. Ct. Dec. 1, 2006), http://www.ncbusinesscourt.net/opinions/2006%20NCBC%2021.pdf (citation omitted). "Determining the reasonableness of a constituent's belief that he was personally represented by the organization's attorney is particularly difficult and fact-intensive in the context of a closely-held corporation." *Id.* ¶ 61 (citation omitted).

{28} Kingsdown has offered affidavits from a number of current Tuggle Duggins attorneys averring that current Tuggle Duggins attorneys had limited or no involvement with Mr. Hinshaw, did not represent him personally on any occasion (and specifically not in connection with any matter at issue in this litigation), and are not "aware" of any confidential information of the Hinshaws.

{29} Nevertheless, Kingsdown acknowledges that Tuggle Duggins assisted Mr. Hinshaw with his separation from his first wife, prepared a premarital agreement on his behalf, represented him in connection with at least two real estate transactions, periodically updated his wills and related documents, and handled matters involving trusts set up for Mr. and/or Ms. Hinshaw (all without billing either of them directly). (Pl.'s Resp. Opp. Mot. Disqualify, p. 3–4.) Kingsdown also acknowledges that the now-deceased Mr. Tuggle was at all times Mr. Hinshaw's "primary point of contact at Tuggle Duggins," (Pl.'s Resp. Opp. Mot. Disqualify, p. 10 fn. 7), and performed nearly all of the personal legal work the Firm did for Mr. or Ms. Hinshaw over the years. Indeed, it appears that Mr. Tuggle regularly provided advice to Mr. Hinshaw, both as an executive of Kingsdown and in his personal capacity, and that Mr. Tuggle was Mr. Hinshaw's continuing and coordinating point of contact at Tuggle Duggins for all of Mr. Hinshaw's and Kingsdown's legal matters.

{30} Accordingly, the Court concludes that there is ample evidence that Mr. Hinshaw could reasonably infer that he had an attorney-client relationship with the Firm, including with Mr. Tuggle prior to Mr. Tuggle's death in 2012.

ii.     Same or Substantially Related Matters

{31} Matters are "substantially related" for the purposes of Rules 1.9 and 1.10(b) "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." N.C. R. Prof'l Conduct 1.9 cmt. 3. "The substantially related test requires a virtual congruence of issues, and the relationship between the issues in the prior [representation] must be patently clear." *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 514, 518 (M.D.N.C. 1996) (internal quotation marks and citation omitted) (interpreting North Carolina Rules of Professional Conduct). "In the context of a motion to disqualify, substantially related has been interpreted to mean 'identical' or 'essentially the same.'" *Hepburn v. Workplace Benefits, LLC*, 2014 U.S. Dist. LEXIS 52628, at *7 (E.D.N.C. Apr. 15, 2014) (quoting *Plant Genetic Sys.*, 933 F. Supp. at 518) (applying North Carolina law). "[T]he concern is whether there is a reasonable

probability that confidences were disclosed in the prior representation which could be used against the former client in the current litigation." *Plant Genetic Sys.*, 933 F. Supp. at 518 (citing *In re Stokes*, 156 Bankr. 181, 187 (Bankr. E.D. Va. 1993) (applying North Carolina law)).

{32} The Hinshaws contend that Tuggle Duggins' representation of Kingsdown in connection with claims relating to the Beach House Transaction, the alleged payment of excessive compensation to Mr. Hinshaw, and alleged improper self-dealing by the Hinshaws involve the same or substantially related matters as those in which current and former Tuggle Duggins attorneys previously represented the Hinshaws.

{33} In opposition, Kingsdown contends that Tuggle Duggins "has never: (1) opened a client matter for [Mr.] Hinshaw; (2) sent an engagement letter to [Mr.] Hinshaw; (3) asked for or received payment from [Mr.] Hinshaw for services provided to him; (4) prosecuted any litigation on" his behalf; or (5) organized a company for Mr. Hinshaw. (Pl.'s Resp. Opp. Mot. Disqualify, p. 3.)

{34} Nevertheless, the Court finds that there is ample evidence that Mr. Tuggle represented Mr. Hinshaw in matters that are the same or substantially related to the matters involved in the current lawsuit. In particular, the evidence of record suggests that Mr. Tuggle likely conceived, directed, and documented the Beach House Transaction between Kingsdown and Mr. Hinshaw, serving as the primary attorney involved in the Transaction and representing both parties' legal interests.

{35} Moreover, Mr. Hinshaw has averred that Mr. Tuggle advised him personally in connection with numerous personal and company transactions over a period of twenty years, and that Mr. Hinshaw "always firmly believed and understood that Tuggle Duggins was advising [him] about what [he] should do as both an executive of Kingsdown and personally – particularly given Tuggle Duggins' extended and ongoing personal representation of [him]." (Second Hinshaw Aff. ¶ 15.) He has also averred that Tuggle Duggins attorneys provided him legal advice concerning Kingsdown's executive compensation structure and, in particular, his own compensation. (Second Hinshaw Aff. ¶¶ 11(b), (d).)

{36} As a result, the Court finds that Mr. Hinshaw shared an attorney-client relationship with Mr. Tuggle and the Firm on matters that are the same or substantially related to the claims Kingsdown has alleged against the Hinshaws in the current litigation.

    iii.    <u>The Firm's Possession of Information Protected by Rules 1.6 and 1.9(c) that is Material to the Matter</u>

{37} The Court must next determine whether any current attorney at Tuggle Duggins has any of the Hinshaws' protected information under Rules 1.6 and 1.9(c) that is material to this case. N.C. R. Prof'l Conduct 1.10(b)(2). Rule 1.6 generally forbids lawyers from revealing information acquired during the professional relationship with their clients unless the disclosure is impliedly authorized to carry out the representation. *See* N.C. R. Prof'l Conduct 1.6(a). Rule 1.9(c) prohibits lawyers from using or revealing information learned during the representation of their clients to their clients' disadvantage. N.C. R. Prof'l Conduct 1.9(c). "The burden rests upon the law firm to prove the former attorney did not share any information about the former client with the remaining attorneys in the firm." *Ferguson*, 174 N.C. App. at 539, 621 S.E.2d at 328 (citing N.C. R. Prof'l Conduct 1.9, cmt. 6 and disqualifying firm where the "record [was] devoid of . . . evidence" that attorney did not share confidential information with other members of firm).

{38} The Hinshaws argue that in light of Mr. Tuggle's involvement with the transactions at issue, the Court should infer that the Firm possesses their confidential information. *See Ferguson*, 174 N.C. App. at 539, 621 S.E.2d at 328 ("[A] firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client.") (citing N.C. R. Prof'l Conduct 1.10 cmt. 2).

{39} In response, Kingsdown has offered affidavits from each of the current Tuggle Duggins attorneys who apparently had any involvement with Kingsdown or the Hinshaws, and each has attested under oath that he is not "aware" of the Hinshaws' confidential information. Kingsdown has also offered affidavits to similar effect from each of the attorneys involved in this litigation on behalf of the Company.

{40} Based on Kingsdown's submissions, however, the Court cannot conclude that Kingsdown has carried its burden to show that no current Tuggle Duggins attorney possesses any of the Hinshaws' material confidential information.

{41} First, Mr. Southerland contends that he has personally reviewed Tuggle Duggins' billing records, which he alleges reflect that no Tuggle Duggins attorneys represented the Hinshaws on matters that are at issue in this lawsuit. (Southerland Aff. ¶ 18.) The Court, however, does not find Mr. Southerland's review of Tuggle Duggins' billing records sufficient to carry the Firm's burden under Rule 1.10(b). In particular, Kingsdown alleges that Tuggle Duggins represented Kingsdown, not Mr. or Mrs. Hinshaw, in connection with both the Beach House Transaction and Mr. Hinshaw's compensation. The Hinshaws contend to the contrary, and Tuggle Duggins has not brought forward any evidence to indicate that any other firm represented Mr. Hinshaw in connection with these specific matters.

{42} Second, in light of Tuggle Duggins' admissions that it has never billed Mr. Hinshaw, opened a client matter for Mr. Hinshaw, sent an engagement letter to Mr. Hinshaw, or asked for or received payment from Mr. Hinshaw for services provided to him – while at the same time admitting that the Firm has represented the Hinshaws in their personal marital, estate, trusts, and financial matters over a twenty-year period – the Court is not persuaded that the Firm's billing records are a determinative or even reliable source to ascertain whether or not the Firm represented the Hinshaws in the matters at issue in this case, and likewise, whether or not the Firm possesses any of the Hinshaws' material confidential information. Indeed, given the Firm's provision of legal services to both Kingsdown and the Hinshaws without maintaining separate records to distinguish between the two, it comes as no particular surprise that the Firm's billing records do not reflect the Firm's representation of the Hinshaws in connection with the transactions in dispute.

{43} Third, although Mr. Southerland attests that he has "personally reviewed" the Firm's electronic billing records, Mr. Southerland does not attest that he – or any other attorney at the Firm – has conducted a personal review of Kingsdown's files. *See Currituck Assocs.-Residential P'ship v. Hollowell*, 170 N.C. App. 399, 403, 612

S.E.2d 386, 389 (2005) (explaining that "it is a general legal principle that affidavits must be based upon personal knowledge") (citation omitted). Instead, Mr. Southerland makes broad, conclusory statements alleging that "Tuggle Duggins' files for matters it has handled for Kingsdown do not contain any confidential or material information of Mr. Hinshaw's that is relevant to this lawsuit," (Southerland Aff. ¶ 14), and that these files "contain no materials or documents with respect to discussions with Mr. Hinshaw relative to the beach house, any alleged corporate misdeeds, or the conveying of Mr. Hinshaw's confidential information to Tuggle Duggins about the alleged transfer," (Southerland Aff. ¶ 19).

{44} In short, Kingsdown has not brought forward competent evidence that the Firm has conducted a sufficient investigation of the Firm's attorneys and files to ascertain whether the Firm has knowledge of the Hinshaws' material confidential information, or if such an investigation has been conducted, provided evidence of what the investigation involved, who and what was consulted, and what the investigation found.

{45} More specifically, Kingsdown has not offered evidence concerning the existence, location, and possession of any files that relate to the Beach House Transaction – in which it appears that Mr. Tuggle provided legal advice to both Kingsdown and Mr. Hinshaw – and whether any current Tuggle Duggins attorneys are reflected in these files as having provided legal work to the Hinshaws or have knowledge of the matters contained in these files. Such files presumably were created and maintained by Mr. Tuggle – or by others at the Firm at his direction – and which, unless destroyed, continue in existence at the Firm. Similarly, Kingsdown has not offered evidence concerning the existence and content of files that may contain material confidential information of the Hinshaws relating to Mr. Hinshaw's compensation or matters involving the Hinshaws' personal travel and other personal expenses which have now been called into question.

{46} Unlike the situation often examined under Rule 1.10(b) when a former attorney leaves a law firm and takes the client's files and confidential documents to his or her new law firm, here, where the primary attorney has died and the Firm has

continued in existence, the client's files and confidential documents presumably remain at the Firm and are available to the other attorneys in the firm. As such, the Court concludes that the failure of the Firm to provide competent and persuasive evidence of the existence and whereabouts of these files, and the clients' confidential documents and information that may be contained therein, is a significant factor in determining whether Kingsdown and the Firm have met their burden under Rule 10(b).

{47} Given the lack of foundation for Mr. Southerland's conclusory statements, the limited representations of seven of the firm's attorneys that they are not "aware" of any material confidential information of the Hinshaws, and Rule 1.10(b)'s emphasis on a law firm's demonstration of the lack of actual knowledge of the current members of the firm, the Court cannot conclude, on this record, that Kingsdown has met its burden under Rule 1.10(b) to show that current attorneys at the Firm do not possess material confidential information of the Hinshaws that is substantially related to the matters at issue in this lawsuit.

### C. Appearance of Impropriety[7]

{48} Even though the Court has concluded that Kingsdown and Tuggle Duggins have failed to meet the requirements of Rule 1.10(b), "[t]he conduct of the attorney need not constitute a violation of the Rules of Professional Conduct . . . to warrant disqualification." *Chemcraft*, 2006 NCBC 13 ¶ 34. Separate and apart from the technical application of the Rules of Professional Conduct to these facts, our courts have made clear that the Court's overarching consideration on a motion to disqualify is to "prevent even the appearance of impropriety and thus resolve any and all doubts in favor of disqualification." *Id.* (citation omitted).

{49} Indeed, "the right of one to retain counsel of his choosing is secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar. Avoiding a conflict and the appearance of impropriety are the best solutions." *Superguide*

---

[7] Having concluded Tuggle Duggins has not met its burden to avoid disqualification under Rule 1.10, the Court does not find it necessary to consider whether the Firm is also disqualified under Rule 1.9.

*Corp. v. DirecTV Enters.*, 141 F. Supp. 2d 616, 625 (W.D.N.C. 2001) (citation omitted) (applying North Carolina law). The Court's primary concern in preventing the appearance of impropriety is the client's perception of events. *See Chemcraft*, 2006 NCBC 13 ¶ 34.

{50} Here, at a minimum, the Court finds that the Hinshaws have shown that Mr. Tuggle represented both Kingsdown and Mr. Hinshaw in the Beach House Transaction and that Mr. Tuggle's legal advice to Mr. Hinshaw in connection with that transaction will be squarely at issue in this litigation.[8] The Court does not find it surprising that Mr. Hinshaw would be confused and concerned that the Firm he considered to be his attorneys in that transaction would now be suing him for allegedly following the advice he claims the Firm provided.

{51} It is also clear that the parties will, again at a minimum, engage in a vigorous contest over whether Mr. Tuggle, Mr. Tumlin, or other former or current Tuggle Duggins attorneys provided legal advice concerning Mr. Hinshaw's compensation on behalf of Kingsdown, Mr. Hinshaw, or both. In any event, the Hinshaws' alleged reasonable reliance on advice from Tuggle Duggins attorneys will be central to their defense against Kingsdown's allegations that Mr. Hinshaw authorized and received excessive compensation.

{52} Further, not only are the Hinshaws likely to call current (and former) Tuggle Duggins attorneys as witnesses in this action,[9] but those attorney-witnesses may potentially face divided loyalties between their allegiance to the Firm and the defense of the Firm's advice, on the one hand, and their duty of loyalty to, and zealous advocacy for, their clients, on the other, as that advice, and the parties' actions in alleged reliance on that advice, comes under intense scrutiny.

{53} In addition, by Tuggle Duggins' own admission, the Firm has rendered a variety of personal legal services over many years to the Hinshaws without rendering

---

[8] The Firm has not offered evidence that it ever sought or obtained a waiver or consent of any kind from either of the Hinshaws concerning the Firm's representation of Kingsdown and the Hinshaws.

[9] Defendant Ray has also represented to the Court that she intends to have at least two, and perhaps up to four, Tuggle Duggins attorneys testify in this matter.

them a bill, presumably commingling the records and confidential information pertaining to the Firm's representation of the Hinshaws with those of Kingsdown. It seems likely that in these circumstances the Firm retains records that the Hinshaws regard as confidential and which involve matters, like the Beach House Transaction, which are material to the current dispute. As Judge Diaz concluded in *Chemcraft*, "mere access to this material is enough to justify . . . disqualification." 2006 NCBC 13 ¶ 43; *see, e.g., Flick Mortg. Investors,* 2006 NCBC 3 ¶¶ 9, 10 (finding attorney's general access to files a basis for disqualification).

{54} In the end, our courts have instructed that the Hinshaws' motion "should succeed or fail on the reasonableness of [their] perception that confidences [they] once shared with [their] lawyer are potentially available to [their] adversary." *Id.* ¶ 34 (quoting *HealthNet*, 289 F. Supp. 2d at 763). The Hinshaws have provided sworn, detailed statements attesting to their reasonable, good faith belief that the confidences they shared with Mr. Tuggle and others at Tuggle Duggins are now available to Kingsdown and can be used against their interests in this litigation. The ultimate question on the Motion to Disqualify, thus, is whether the Hinshaws' perception is reasonable. Based on the record here – where Tuggle Duggins provided legal advice, through Mr. Tuggle as well as through current Tuggle Duggins attorneys, to both Kingsdown and Mr. Hinshaw on various matters, including the Beach Property and arguably Mr. Hinshaw's compensation – both of which are core issues in this litigation – the Court concludes that the Hinshaws' perception that their material confidential information is "potentially available to [their] adversary" is reasonable. As such, the Court finds that an appearance of impropriety exists on these facts.

IV.

CONCLUSION

{55} Accordingly, based on the foregoing, and despite the drastic nature of disqualification, the Court concludes that disqualification of Tuggle Duggins from representing Kingsdown against the Hinshaws in this litigation is appropriate. *Id.* ("[w]here a reasonable client would be concerned by a potential conflict, a court must

err on the side of disqualification"); *see also Ferguson*, 174 N.C. App. at 539–40, 621 S.E.2d at 328 (disqualifying law firm under Rule 1.10 because firm failed to prove plaintiff's confidential information was not shared with current members of the firm).

{56} **WHEREFORE**, the Court **GRANTS** the Hinshaw Defendants' Motion to Disqualify, and hereby **DISQUALIFIES** Tuggle Duggins from further representation of Kingsdown in this matter against the Hinshaws and **ORDERS** the Firm to comply with the requirements of the North Carolina Rules of Professional Conduct in connection with any material confidential information of the Hinshaws that the Firm possesses.

{57} The Court **DENIES** Kingsdown's Motion to Strike the Second Hinshaw Affidavit.

{58} Kingsdown shall have through and including April 30, 2015 to hire new counsel to represent the Company in connection with matters adverse to the Hinshaws in this action and file appropriate notices of appearance.

**SO ORDERED**, this the 25th day of March 2015.